# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | | |
|---|---|---|
| **SCOTT LYNN JONES** | : | **DOCKET NO. 5:15-cv-2494** |
| **D.O.C. # 466137** | | |
| | | |
| **VERSUS** | : | **CHIEF JUDGE HICKS** |
| | | |
| **N. BURL CAIN** | : | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Scott Lynn Jones, who is proceeding pro se in this matter. Jones is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola, Louisiana. N. Burl Cain, former warden of that facility, opposes the petition. Doc. 16. For the following reasons, **IT IS RECOMMENDED** that the petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

### A. *Conviction*

On June 30, 2010, Jones was charged by bill of information filed in the First Judicial District Court, Caddo Parish, Louisiana, with one count of simple robbery and one count of aggravated flight from an officer. Doc. 16, att. 3, p. 12. Both charges related to events occurring on May 8, 2010. *Id.* The state later filed an amended bill, dismissing the robbery

charge, and Jones proceeded to a jury trial on the aggravated flight charge, a violation of Louisiana Revised Statute § 14:108.1(C) on June 21, 2011. *Id.* at 13, 180. At the conclusion of the one-day trial Jones was convicted as charged, and the state filed a multiple offender bill on the same day alleging that he was a third felony offender. *Id.* at 145–46.

Following a multiple offender hearing on July 7, 2011, Jones was adjudicated a third felony offender based on a 2003 conviction for simple burglary, a 2004 conviction for simple robbery, and the instant 2011 aggravated flight conviction.[1] Doc. 16, att. 4, pp. 18–34. Jones waived sentencing delays and the trial court imposed a mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. *Id.* at 34–37. Jones filed a motion to reconsider sentence, which the trial court denied on July 14, 2011. Doc. 16, att. 3, pp. 153–54.

### B. Direct Appeal

Jones filed an appeal in the Louisiana Second Circuit Court of Appeal, complaining that the trial court had imposed an excessive sentence. *State v. Jones*, 103 So.3d 420 (La. Ct. App. 2d Cir. 2012). The appellate court reviewed this claim on the merits and denied relief. *Id.* Jones then sought review in the Louisiana Supreme Court, which denied same on March 8, 2013. *State v. Jones*, 109 So.3d 356 (La. 2013). He did not file a petition for certiorari in the United States Supreme Court. Doc. 5, p. 3.

---

[1] Prior to this hearing the trial court denied a motion for judgment of acquittal and motion for new trial made by Jones. Doc. 16, att. 3, pp. 150–1; doc. 16, att. 4, pp. 4, 14–15.

### C. *State Collateral Review*

Jones next sought review through a pro se application for post-conviction relief filed in the trial court on April 7, 2014.[2] Doc. 16, att. 5, pp. 52–73. There he raised the following claims for relief:

1. The trial court's adjudication of Jones as a third habitual offender involved an unconstitutional ex post facto application of the law.

2. He received ineffective assistance of counsel based on trial counsel's

    a. stipulation to the state's reference to the robbery with which he had been charged but not convicted;

    b. failure to investigate or cross-examine witnesses, object to trial errors, or form a defense; and

    c. failure to raise exceptional circumstances during the habitual offender proceedings.

3. He was denied a fair trial due to the introduction of "other crimes" evidence.

*Id.* at 63–72. The trial court denied all claims on the merits, without an evidentiary hearing. *Id.* at 93–94. Jones next sought review in the Second Circuit, which denied same. *Id.* at

---

[2] Under the prison mailbox rule, followed by both federal courts and Louisiana state courts, a pro se pleading from an inmate is treated as filed on the date that the inmate submits the document to prison authorities for mailing. *Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006). Jones's pro se application for post-conviction relief was stamped as filed by the trial court on April 28, 2014, but marked as submitted to the court by him and also mailed to opposing counsel on April 7, 2014. Doc. 16, att. 5, pp. 52, 73. April 7, 2014, is therefore the effective date of filing.

166. He then sought review in the Louisiana Supreme Court, which denied same on August 28, 2015. *State ex rel. Jones v. State*, 175 So.3d 400 (La. 2015).

### D. *Federal Habeas Petition*

Jones filed the instant petition on October 5, 2015. Doc. 1. Here he raises the following claims for relief:

1. The trial court imposed an unduly harsh and excessive sentence.

2. The trial court's adjudication of Jones as a third habitual offender involved an unconstitutional ex post facto application of the law.

3. Jones received ineffective assistance of counsel due to trial counsel's

   a. stipulation to the state's reference to his commission of a robbery;

   b. failure to investigate, cross-examine witnesses, or form a defense; and

   c. failure to raise exceptional circumstances at his habitual offender proceeding.

4. Jones was denied a fair and impartial trial due to the introduction of other crimes evidence.

Doc. 5, att. 1. The respondent opposes the petition. Doc. 16. Jones has not filed a reply and his time for doing so has lapsed.

## II.
## LAW & ANALYSIS

### A. Standards Governing Habeas Review

#### 1. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 544 U.S. 269 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions

for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### 2. *Exhaustion and Procedural Default*

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore the court considers any assertions by respondent under these doctrines, in addition to conducting its own review.

### a. *Exhaustion of state court remedies*

A petitioner seeking federal habeas corpus relief must exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 117 U.S. 241, 252 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### b.  *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 748–51 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 489 U.S. 255, 262–63 (1989). To serve as

adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### 3. General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). The court's review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas

petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary result]." *Bell v. Cone*, 543 U.S. 447, 452–53 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood*

-9-

*v. Allen*, 558 U.S. 290, 301 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B. Application

The respondent does not contest the timeliness of this petition, and a review of the pleadings reveals that it is timely under 28 U.S.C. § 2244(d).[3] Accordingly, the court proceeds to a consideration of each claim, considering the respondent's arguments on exhaustion and procedural default under the applicable claims.

### 1. Excessive sentence

The petitioner asserts that the mandatory sentence of life without parole that he received as a third felony offender violates the Eighth Amendment's prohibition on cruel and unusual punishment. Doc. 5, att. 1, pp. 9–12. He presented a version of this claim in his direct appeal, with the Second Circuit denying relief and the Louisiana Supreme Court then denying writs without comment. Accordingly, the Second Circuit's opinion is the last decision on the merits as to this claim.

The respondent argues that this claim is unexhausted because it was only presented as a state law violation on direct appeal. Doc. 16, att. 1, pp. 12–14. He maintains that the

---

[3] Jones's conviction and sentence became final on June 6, 2013, when his time for filing a petition for writ of certiorari with the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore **305 days** accrued against § 2244(d)'s one-year limit before Jones filed his application for post-conviction relief in the trial court on April 7, 2014. The limitations period was tolled until the Louisiana Supreme Court's denial of review on August 28, 2015, allowing just an additional **38 days** to accrue before the federal habeas petition was filed in this court on October 5, 2015, for a total of **343 days** counted against § 2244(d)'s one-year statute of limitations.

claim is now subject to technical procedural default because Jones is now procedurally barred from reasserting the issue in the state courts. *Id.*

As noted above, proper exhaustion requires that the petitioner "fairly present[] the substance of his claim to the state courts." *Wilder*, supra 274 F.3d at 259. "[A] fleeting reference to federal law within a lengthy state-law focused argument 'does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights.'" *Norris v. Davis*, 826 F.3d 821, 831 (5th Cir. 2016) (quoting *Wilder*, 274 F.3d at 260)) (internal quotations omitted). Instead, the habeas petitioner must have given the state courts a "'fair opportunity' to apply controlling legal principles to the facts bearing on his constitutional claim." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

In his briefing of the excessive sentence claim to the Louisiana Second Circuit Court of Appeal and Louisiana Supreme Court, Jones argued that the trial court had failed to consider the appropriate criteria set forth under the Louisiana Code of Criminal Procedure and that the sentence violated the Louisiana Constitution's prohibition on "cruel, excessive or unusual punishment." Doc. 16, att. 4, pp. 52–56; doc. 16, att. 5, pp. 17–20. This briefing is devoid of any reference to the Eighth Amendment, which governs excessive sentence claims based on violations of the United States Constitution, or federal case law. Likewise, the Second Circuit made no reference to federal law or jurisprudence in its discussion of this claim. Other courts have deemed such presentation sufficient, noting that the Louisiana Constitution offers no less protection than the Eighth Amendment against excessive sentences. *See Davis v. Cain*, 44 F.Supp.2d 792, 795–96 (E.D. La. 1999). However, this

court has already held that a petitioner's exclusive reliance on the Louisiana Constitution and failure to invoke the Eighth Amendment on an excessive sentence claim renders that claim unexhausted. *Lane v. Warden La. State Penitentiary*, 2013 WL 1152713, at *4 (W.D. La. Feb. 25, 2013), *report and recommendation adopted*, 2013 WL 1152724 (W.D. La. Mar. 19, 2013). Accordingly, it likewise deems Claim 1 in this matter unexhausted.

Under the Louisiana Code of Criminal Procedure, an application for post-conviction relief generally must be filed within two years of the date on which the judgment of conviction and sentence became final. La. C. Cr. P. art. 930.8(A). As the respondent notes, Jones's conviction became final under state law fourteen days after the Louisiana Supreme Court denied writs on March 8, 2013. *See id.* at art. 922. It does not appear that any circumstance for allowing an out-of-time application would exist under state law, and Jones shows no other exception to this procedural bar. Accordingly, the claim is subject to technical procedural default. Jones does not demonstrate cause and prejudice or actual innocence, and so he is not entitled to federal habeas review of this claim.

Even if Jones's claim were deemed exhausted, however, he could not show a right to habeas relief. While the Eighth Amendment "prohibits . . . sentences that are disproportionate to the crime committed," the Supreme Court also recognizes that the determination of prison sentences is a legislative rather than judicial prerogative. *Solem v. Helm*, 463 U.S. 277, 284 (1983); *Rummel v. Estelle*, 445 U.S. 263, 274–76 (1980). Outside of the capital punishment context, successful proportionality challenges "have been exceedingly rare." *Harmelin v. Michigan*, 501 U.S. 957, 963 (1991) (quoting *Rummel*, 445 U.S. at 272).

Under this guidance, the Fifth Circuit has set forth the following framework for evaluating excessive sentence claims:

> [W]e will initially make a threshold comparison of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then . . . compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). When evaluating an excessive sentence claim based on a habitual offender statute, the court must remember that the sentence imposed reflects "the seriousness of [petitioner's] most recent offense, not as it stands alone, but in light of his prior offenses." *Id.* The Fifth Circuit has also noted that *Rummel*, in which the Supreme Court upheld a mandatory life sentence with the possibility of parole under a Texas repeat offender statute for a petitioner, who had been convicted of obtaining less than $200 under false pretenses, provided a benchmark for excessive sentence claims. *United States v. Gonzales*, 121 F.3d 928, 943 (5th Cir. 1997) (overruling recognized on other grounds in *United States v. O'Brien*, 560 U.S. 218 (2010)). The Court emphasized:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate sentences is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in *Rummel* falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

*Id.* (footnote omitted).

While the defendant in *Rummel* received the benefit of parole along with his mandatory life sentence, Jones received an enhanced life sentence under state habitual

-13-

offender laws. Rummel's prior offenses, however, were for similar crimes involving smaller amounts of cash and no use of force or danger – fraudulent use of a credit card to obtain $80 worth of goods or services and passing a forged check in the amount of $28.36. *Rummel*, 445 U.S. at 286. Jones's prior offenses, on the other hand, were for simple burglary and simple robbery, and his instant conviction was for aggravated flight from an officer. Doc. 16, att. 4, pp. 18–34. The three offenses were committed over an eight year period, and both simple robbery and aggravated flight from an officer are defined under Louisiana law as crimes of violence. *Id.*; *see* La. Rev. Stat. § 14:2. Given the constitutional litmus test established in *Rummel*, the legislature's prerogative to establish habitual offender sentencing schemes, and the more serious nature of Jones's offenses, he cannot show that his sentence was grossly disproportionate to the offense and that the trial court violated the Eighth Amendment by declining to depart from the mandatory minimum in his case. Accordingly, he would not be entitled to relief on this claim even if the default were excused.

### 2. *Ex post facto application of the law*

Jones next claims that his habitual offender adjudication involved an unconstitutional ex post facto application of the law. Specifically, he claims that his third habitual offender conviction was obtained under a version of the statute that went into effect on July 6, 2010, even though his last felony conviction was based on an offense that occurred on or about May 8, 2010. Doc. 5, att. 1, pp. 13–17.

Jones raised this claim on post-conviction relief and the state district court denied relief, finding that he qualified as a third felony offender under the relevant statute as it

existed at the time of his offense. Doc. 16, att. 5, p. 93. The Second Circuit and Louisiana Supreme Court denied review without comment, so the district court's opinion is the one under § 2254(d) review in this matter. The respondent concedes, and the court agrees, that this claim is exhausted. Doc. 16, att. 1, p. 14. The state court rulings reveal no basis for application of a procedural default.

Jones asserts that the newer version of the statute amended one of its definitions of a qualifying felony for a mandatory term of life imprisonment from one punishable by a term of imprisonment of "more than twelve years" to one punishable by a term of "twelve years or more," and that his burglary conviction only qualified as a prior felony under the latter version. Doc. 5, att. 1, p. 14. He relies on changes to Louisiana Revised Statute § 15:529.1(A)(1)(b)(ii), part of Louisiana's Habitual Offender Law. The version of that statute in effect from August 15, 2006, until July 5, 2010, read:

> If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of the commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without the benefit of probation, parole, or suspension of sentence.

The statute was amended by Act 973 of the 2010 Louisiana Legislative Session, but only to renumber the sections so that this provision was instead listed at Louisiana Revised Statute § 15:529.1(A)(3)(b). The change described by Jones, from "more than twelve years" to "twelve or more years," instead occurred in 2001, well before his final felony conviction. *See Nelson v. Warden, La. State Penitentiary*, 2014 WL 4217372, at *5 (W.D.

La. Aug. 25, 2014). Jones shows no error in the state court's conclusion that he qualified as a third felony offender under the version of the statute in effect in May 2010. Accordingly, he fails to demonstrate that the state court's ruling was contrary to or involved an unreasonable application of federal law, and he is not entitled to habeas relief under this claim.

### 3. Ineffective assistance of counsel

Jones asserts that he received ineffective assistance of counsel, in violation of his rights under the Sixth Amendment, based on three areas of allegedly deficient performance by trial counsel. Doc. 5, att. 1, pp. 17–22. He raised this claim on post-conviction relief, and the state court denied relief. Doc. 16, att. 5, p. 94. The Second Circuit and Louisiana Supreme Court denied review without comment, so the district court's opinion is the one under § 2254(d) review in this matter. The respondent concedes, and the court agrees, that this claim is exhausted. Doc. 16, att. 1, p. 14. The state court rulings reveal no basis for application of a procedural default.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 687. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been

-16-

cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 S.Ct. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

The state district court reviewed the alleged instances of deficient performance collectively and concluded that Jones "[had] not met his burden under *Strickland* of showing a different outcome." Doc. 16, att. 5, p. 94. It also noted no deficient performance under some of the allegations, stating that the robbery testimony was admissible as *res gestae* and rejecting the petitioner's contention that witnesses had not been properly cross-examined. *Id.* The court reviews these conclusions under 28 U.S.C. § 2254(d).

### a. Stipulation to other crimes evidence

Jones first points to trial counsel Sarah Giddens's stipulation to testimony about his commission of a simple robbery, a charge the state had dismissed prior to trial. At trial the court reviewed the amended bill of information with Jones, confirming that he was only charged with aggravated flight but could be billed as a multiple offender. Doc. 16, att. 3, pp. 180–81. The prosecutor then stated for the record that there would be a stipulation as to the facts of the simple robbery, even though the charge had been dismissed, because "it forms the underlying basis for the aggravated flight." *Id.* at 181. Giddens confirmed that she had discussed the matter with the prosecutor and believed that any evidence relating to the robbery would be "very limited." *Id.*

The prosecutor referenced the robbery in the opening statement, telling the jury that an officer would testify that on May 8, 2010, Jones had been developed as a suspect in a robbery, that the officer spotted him near the crime scene and began watching him, and that he then pursued him for what turned into a forty-minute chase after Jones ran a stop sign. *Id.* at 196–99. The officer, John Majeric, was then called as the state's first witness and testified to the encounter described in the state's opening statement:

> On that day I was, like you said, working regular patrol, and myself and another officer had just gotten off of a call. And we were down at the southern end of the city when we were dispatched to a theft that had just occurred at the intersection of Wallace and 70th Street. It was at The Family Dollar.
> . . . .
> At that time dispatch had given us an update that there was individual that had witnessed the crime behind the vehicle and he was following it, and they had just turned onto Wingate. So – and they were heading southbound, so I knew I was coming right up on them.
> We were looking for a black vehicle. We didn't have any other description other than that. . . . I observed a black Pontiac Grand Prix proceed

southbound down Wingate, and as soon as I got turned around he ran the stoplight. The light was displayed red and he continued southbound through the light, at which time I had a pretty good idea at that point that that was the vehicle we were looking for.

*Id.* at 203–04. He then described how he attempted to pull Jones over, initiating lights and sirens, and how a chase ensued as described above. *Id.* at 204–05. Majeric also acknowledged that he would have had grounds to pull Jones over based on Jones's running the red light alone. *Id.* at 204.

Under both Louisiana and federal law, "[t]he general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed." *State v. Haarala*, 398 So.2d 1093, 1097 (La. 1981) (citing 1 Wigmore Evidence § 218 (3d ed. 1940)). In Louisiana, such evidence is termed "*res gestae*." *Id.* The *res gestae* exception requires a close proximity in time and location between the charged event and other crimes evidence, "to insure that purpose served . . . is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v. Taylor*, 838 So.2d 729, 741 (La. 2003) (internal quotations omitted). "Other crimes" evidence is admissible under the *res gestae* exception because it is "so nearly connected to the charged offense that the state could not accurately present its case without reference to [it]." *Id.*

Here trial counsel did not challenge the admission of testimony about Jones being a suspect in a robbery right before the car chase and instead stipulated to same. The state district court determined that the stipulation was not deficient performance because testimony was properly admitted as *res gestae*. Jones challenges that conclusion, alleging

that the state could have explained the commencement of the car chase based on his running the red light and without reference to the robbery. This court need not review that finding, however, because as the state court also noted, Jones fails to show resulting prejudice.

Aggravated flight from an officer is defined under Louisiana law as "the intentional refusal of a driver to bring a vehicle to a stop . . . under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense." La. Rev. Stat. § 14:108.1(C). Jones does not dispute Majeric's testimony that he (Jones) refused to pull over while pursued by police vehicles with lights and sirens in use. Two other officers also testified and corroborated Majeric's account, and all three officers testified that the chase continued onto the interstate at speeds of over 115 miles per hour. *See* doc. 16, att. 3, pp. 204–30. The dashboard camera footage from one officer's vehicle was played for the jury and showed the interstate chase as well as Jones speeding through residential areas, running red lights and stop signs, while pursued by multiple police cars. *Id.* at 219–27. The defense rested without putting on any witnesses. *Id.* at 234.

The state produced ample unrefuted evidence to show Jones committed the charged offense, by refusing to stop and fleeing the officers in a manner that endangered human life. Jones fails to show a reasonable probability that the verdict would have been different if not for the references to the Family Dollar robbery. Accordingly, he shows no error to the state court's ruling.

### b. *Failure to investigate*

Jones next complains that trial counsel failed to investigate his case, prepare a defense, review the evidence before trial, or adequately cross-examine the state's witnesses.[4] Doc. 5, att. 1, pp. 20–22. He alleges that the police put forth contradictory statements about the chase and that trial counsel failed to call the two officers he had requested, Crow and Gerbine, as witnesses. *Id.* He also contends that counsel failed to challenge the officers' testimony about the speed of his vehicle and to argue that the video had been altered. *Id.*

Nothing in Crow and Gerbine's respective police reports is favorable to Jones. *See* doc. 16, att. 3, pp. 59, 64. Contrary to Jones's assertions, these officers did not contradict the testimony offered at trial.[5] As for counsel's failure to otherwise prepare a defense or argue alteration of the state's evidence, Jones does not specify what kind of argument could have refuted the evidence against him.[6] Furthermore, even if Jones could establish deficient

---

[4] He also asserts that trial counsel failed to seek a plea deal. Doc. 5, att. 1, p. 20. This is contradicted by the record, which shows that Giddens put forth an offer on Jones's behalf and that the prosecution rejected same and made clear it would not entertain any deals resulting in less than a life sentence. Doc. 16, att. 3, pp. 183–85.

[5] Although Crow stated that the speeds in the residential area were "in the range of 5-10 mph over the posted speed limit," he also noted that speeds increased as the chase moved onto the interstate. *Id.* at 64. Majeric had testified that, before Jones got on the interstate, he "wasn't [driving at an] excessive speed" and was usually only traveling about ten to fifteen miles per hour over the speed limits in the city. Doc. 16, att. 3, pp. 205, 209. He only testified that Jones reached speeds in excess of 100 miles per hour when he was on the interstate. *Id.* at 208–09. The other two officers only testified as to Jones's speed on the interstate. *See id.* at 214–15, 218–19.

[6] In the event that he is talking about the fact that the dash camera footage did not display his vehicle's speed, defense counsel raised this issue on cross-examination and Officer Willis acknowledged that this metric was usually displayed. Doc. 16, att. 3, pp. 228–30. Willis stated that he was not sure why the speed had not been recorded with the video. *Id.* In light of the testimony from three officers on their observations of Jones's top speed, based in part on how fast their own vehicles were traveling in pursuit [*see* doc. 16, att. 3, p. 210], counsel's failure to imply that the

performance under these vague and conclusory allegations, he cannot show sufficient prejudice under *Strickland* in light of the evidence described above.

### c.  *Failure to raise exceptional circumstances*

Finally, Jones argues that counsel should have raised his drug addiction, as well as rehabilitative efforts,[7] as a special circumstance exempting him from consequences as a habitual offender or otherwise entitling him to leniency. Doc. 5, att. 1, p. 22. Jones was subject to a mandatory term of life imprisonment without parole as a result of his felony offender adjudication, and the trial court imposed that sentence. He does not show where else the trial court could have exercised its discretion, except as to sentencing, based on the state's determination to bill him as a multiple offender. Accordingly, the court reviews this claim as one based in trial counsel's failure to argue for a downward departure from the mandatory minimum, using Jones's alleged drug addiction and rehabilitative efforts as mitigating factors.

"Although courts have the power to declare a mandatory sentence excessive under Article I, § 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court finds there is clear and convincing evidence that would rebut the presumption of constitutionality." *State v. Thomas*, 842 So.2d 1206, 1207 (La. Ct. App.

---

video was altered to conceal Jones's actual speed is not enough to show deficient performance. As for his assertion that one officer described him driving around the spike strips twice while the video allegedly only showed this happening once [doc. 5, att. 1, p. 21], Jones does not show how challenging this testimony could have undermined the other evidence that he was driving in a dangerous manner.

[7] To this end Jones states that he had admitted himself for addiction treatment on April 24, 2010, and attended classes over the preceding year to better himself. Doc. 5, att. 1, p. 22.

2d Cir. 2003). The Second Circuit considered Jones's substance abuse history and other potential mitigating factors in evaluating Jones's excessive sentence claim, and held that he had not shown that these factors, either individually or cumulatively, justified a downward departure from the mandatory minimum in his case. *Jones*, 103 So.3d at 422–23. Moreover, it specifically noted that "drug addiction has been found insufficient to rebut the presumption of the constitutionality of a defendant's enhanced life sentence under the multiple offender statute." *Id.* at 423 (quoting *State v. Baker*, 776 So.2d 1212, 1218–19 (La. Ct. App. 5th Cir. 2000), *writ denied*, 802 So.2d 621 (La. 2001)). Jones cannot show that counsel would have succeeded on any argument that his drug addiction, or his attempts at treatment in the year preceding his aggravated flight, exempts him from the mandatory minimum sentence as a third felony offender. Accordingly, he does not satisfy either of *Strickland*'s prongs based on counsel's failure to make this futile argument. Jones shows no error to the state court's ruling on any of his ineffective assistance claims above and is therefore not entitled to habeas relief.

### 4. *The trial court violated due process by admitting "other crimes" evidence*

Jones next alleges that his rights were violated when the trial court permitted the stipulated references, supra, to the Family Dollar robbery.[8] Doc. 5, att. 1, pp. 23–25. The respondent contends that this claim is unexhausted due to Jones's exclusive reliance on state law. Doc. 16, att. 1, p. 15. In his application for post-conviction relief, Jones

---

[8] He also raises an ineffective assistance claim based on trial counsel's failure to object. Doc. 5, att. 1, p. 24. The court has already considered these allegations supra based on the ineffective assistance/stipulation claim, supra.

complained generally that he was "denied a fair and impartial trial," "in violation of the Fourteenth Amendment," based on the trial court's alleged error. Doc. 16, att. 5, p. 70. His argument, however, focused on state procedural requirements and evidentiary rules that the trial court allegedly permitted the state to violate. *Id.* at 71–72.

General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). In this matter, Jones failed to cite any federal case law or otherwise expound on his argument that the state court's alleged error of state law amounted to a violation of his right to due process. Accordingly, he did not give the state courts "the opportunity to address an alleged violation of federal rights," *Norris*, supra, 826 F.3d at 831, and the claim is unexhausted. For the reasons stated supra under Claim 1, he would be procedurally barred from reasserting this claim in the state courts, and he does not provide a basis for excusing the technical procedural default. The claim is thus barred from federal review.

Even if Jones's references to a violation of his right to a fair trial based on state law violations were sufficient to exhaust his claim in the state courts, he has not shown a basis for federal habeas relief. He alleges that the state court's decision to permit the stipulation on the uncharged offense – the 2010 robbery from which the car chase originated – violated state evidentiary rules and thus amounted in a violation of his right to a fair trial, in that the state failed to follow the procedures set forth in *State v. Prieur*, 277 So.2d 126 (La. 1973) for establishing the admissibility of such evidence. Doc. 5, att. 1, pp. 23–24. As the courts have repeatedly emphasized, "[f]ederal habeas corpus review is limited to errors of

-24-

constitutional dimension." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). Habeas relief will not lie for an evidentiary error unless it is so extreme as to constitute a denial of fundamental fairness. *Id.* As noted supra under Claim 3, admission of "other crimes" of the accused is generally prohibited under Louisiana law but may be allowed under the *res gestae* exception, under which the parties stipulated to allow limited testimony about the robbery. *See* doc. 16, att. 3, p. 181. No *Prieur* notice is required for *res gestae* evidence. *Mack v. Warden*, 2013 WL 4894063, at *8 (W.D. La. Sep. 11, 2013) (citing *State v. Broussard*, 664 So.2d 835, 838 (La. Ct. App. 3d Cir. 1995)). Jones can show no error in the application of state evidentiary rules, let alone constitutional violation, through the trial court's failure to conduct a *Prieur* hearing. He is therefore not entitled to habeas relief on this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen

(14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

**THUS DONE AND SIGNED** in Chambers this 27th day of September, 2018.

Mark L. Hornsby
U.S. Magistrate Judge